```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Glenn R. Young

    v.                               Civil No. 13-cv-551-LM
                                          Opinion No. 2014 DNH 233
Carolyn W. Colvin,
Acting Commissioner, Social
Security Administration


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Glenn Young moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ"), is affirmed.

**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of

> the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from

2

the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991) (citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material Facts (doc. no. 11).  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Young first applied for DIB and SSI in 2011 at the age of 35.  He alleged disability due to, among other conditions, back and hip pain.  Sometime prior to 2008, Young was involved in a motor-vehicle accident in which he injured his hip.  Young completed the ninth grade of high school and cannot read or write.

3

Young submitted numerous medical records with his application, which include the following records of medical imaging. Young had two x-rays in May of 2008. An x-ray of his lumbar spine showed no abnormalities and no degenerative changes. An x-ray of Young's hip revealed mild calcification of the hip joint and a small chip fracture. A repeat x-ray of Young's left hip in November of 2009 was normal.

Young had two Magnetic Resonance Imaging ("MRI") studies of his lumbar spine in 2012. In February, an MRI showed mild degenerative changes. In November, an MRI revealed minimal anterior spondylolisthesis,[1] mild degenerative disc-space narrowing, minimal spinal stenosis,[2] a mild disc bulge, and multilevel degenerative facet disease.

Young had an x-ray of his hips in May of 2012. That image showed no fracture or dislocation and minimal joint-space narrowing in both hip joints.

---

[1] Spondylolisthesis is defined as "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or on the sacrum." Stedman's Medical Dictionary 1813 (28th ed. 2006).

[2] Stenosis is defined as "a stricture of any canal or orifice." Stedman's, supra note 1, at 1832.

Young's records also document his complaints of back and hip pain and various treatments he has received for that pain. Beginning in 2010, Young was treated at Paincare Center. There, he received pain medication and epidural steroid injections to treat both his back and hip pain. In February of 2012, his Paincare Center treatment provider, Donna Flynn, noted that she was "unsure why he has so much pain still in light of the recent normal MRI, despite relatively significant dosages of both long and short acting meds." Tr. 817.

Young's records also document participation in physical therapy. From December of 2011 to January of 2012 he made eight visits to a physical therapist. However, Young stopped this form of treatment because he felt it was not helping him. In a note connected with these visits, the physical therapist indicated that Young's reactions to the therapist touching his back were consistent with "symptom magnification," or overstating his pain symptoms.

Young's DIB and SSI application was denied in November of 2011 and Young requested a hearing before an ALJ. ALJ Jonathan Baird conducted a hearing on October 24, 2012. At that hearing the ALJ took testimony from Young and a vocational expert ("VE"). Specifically, Young testified that in 2010, his left side back and hip pain became so severe he could no longer work.

5

Young testified that his left leg felt swollen and numb with tingling in his left foot.  Young testified that he took meloxicam, methadone, and oxycodone to alleviate his pain, but that the medications caused stomachaches, nausea, and constipation.

Young also testified about his daily activities and residual functional capacity.  He described helping his son get ready for school and walking him to the bus, which is about 30 feet from his house.  After helping his son, Young stated that he needed to take a break to alleviate his pain.  He testified that he could mow his lawn for 20 to 30 minutes and help with housework such as vacuuming and washing dishes.  But Young also testified that he could no longer play outside with his son, ride bicycles, ride motorcycles, or work on cars due to his back pain.  He stated that if he did work on cars he could only do so for 20 to 30 minutes before needing to rest.  Young stated that he could not lift 15 pounds, and if he attempted to lift 10 pounds "it would hurt."  Tr. 56.  Young stated that he could walk for 20 to 30 minutes at a time.  Young testified that if he was offered a full-time job at which he could sit most of the time, but had the option to change positions, he would try to work.

After the hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3.  The claimant has the following severe impairments: lumbar degenerative disc disease, left hip arthritis, tinnitus, migraine headaches, and a learning disability (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with additional limitations.  He can occasionally crawl, stoop, kneel, crouch, and climb ramps or stairs; but never climb ladders, ropes, or scaffolds.  He is limited to simple and routine tasks.  He requires the ability to alternate between sitting and standing every thirty minutes.  In addition, he cannot understand, remember, or carry out detailed instructions.
>
> . . . .
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> . . . .
>
> 10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569(a), 416.969, and 416.969(a)).

Tr. 11-12, 17. Based on the testimony of the VE, the ALJ found that Young could work as a bench worker, an assembler inspector, or an inserter/packer.

## Discussion

According to Young, the ALJ's decision should be reversed, and the case remanded, because the ALJ erred in finding that Young's subjective complaints of pain were not credible.

### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The sole question in this case is whether Young is disabled.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits). Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are : 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that [he] can still perform past relevant work, then the application is denied; 5) if the [claimant], given [his] residual functional capacity, education, work experience, and age, is

9

```
      unable to do any other work, the application is
      granted.
```

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the [claimant] or other witness;
> and (3) the [claimant]'s educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Young's Argument

Young argues that the ALJ's credibility assessment was not supported by substantial evidence because: (1) his complaints of pain are substantiated by objective medical evidence; and (2) the ALJ mischaracterized his testimony about his daily activities.  The court addresses each of these arguments in turn.

According to Social Security Ruling ("SSR") 96-7p, "an individual's statement(s) about his or her symptoms is not in itself enough to establish the existence of a physical or mental impairment or that the individual is disabled." 1996 WL 374186, at *2. "A symptom is an individual's own description of his or her physical or mental impairment(s)." Id.

When "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," id., are alleged, SSR 96-7p prescribes

> a specific staged inquiry that consists of the following questions, in the following order: (1) does the claimant have an underlying impairment that could produce the symptoms he or she claims?; (2) if so, are the claimant's statements about his or her symptoms substantiated by objective medical evidence?; and (3) if not, are the claimant's statements about those symptoms credible?

Allard v. Colvin, No. 13-cv-82-JL, 2014 WL 677489, at *2 (D.N.H. Feb. 21, 2014) (citation omitted); Valiquette v. Astrue, 498 F. Supp. 2d 424, 434 (D. Mass. 2007) ("dissonance between the objective medical assessments and the plaintiff's description of the level of pain he was experiencing . . . merely poses the question of the credibility of his subjective complaints, it does not answer it").

If an adjudicator reaches the third step in the inquiry, i.e., the credibility question, he or she must also consider additional evidence, such as:

    1. The individual's daily activities;

    2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

    3. Factors that precipitate and aggravate the symptoms;

    4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

    5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

    6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

    7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3.  In this circuit, the seven considerations listed above are commonly referred to as the Avery factors.  However, "[a]s a matter of law, the ALJ is not required to address all of the Avery factors in his decision." Matos v. Astrue, 795 F. Supp. 2d 157, 164 (D. Mass. 2001) (citing N.L.R.B. v. Beverly Enters.-Mass., Inc., 174 F.3d 13, 26 (1st Cir. 1999)).

    An ALJ's credibility determination must be supported by substantial evidence, see Irlanda Oritz, 955 F.2d at 769, and "is entitled to deference, especially when supported by specific findings," Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st

Cir. 1987) (citing Da Rosa v. Sec'y of HHS, 803 F.2d 24, 26 (1986)).  That said, an ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2 (emphasis added).  In other words, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  Id.  To perform a proper discussion and analysis, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Balaguer v. Astrue, 880 F. Supp. 2d 258, 268 (D. Mass. 2012) (quoting Bazile v. Apfel, 113 F. Supp. 2d 181, 187 (D. Mass. 2000); citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

   Here, the court can find no fault with the manner in which the ALJ evaluated Young's credibility.  The ALJ clearly identified the statements to which he applied the credibility analysis.  See Weaver v. Astrue, No. 10-cv-340-SM, 2011 WL 2580766, at *6 (D.N.H. May 25, 2011) ("As a starting point for the following analysis, it is necessary to identify the

13

statement(s) at issue."). Then, the ALJ answered the first question of the staged inquiry by finding "that [Youngs's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 13.

The ALJ then answered the second question of the staged inquiry by finding that "[w]hile the claimant continues to experience some level of pain from his injury, the medical records do not show that it is disabling." Tr. 14. To bolster that finding, the ALJ pointed to several specific pieces of objective medical evidence including reports that Young's gait, or manner of walking, was normal, certain diagnostic medical imaging that revealed mild degenerative changes and minimal abnormalities, and straight-leg raise tests that were negative for pain. Id.

At this step, Young takes issue with the ALJ's reference to negative straight-leg raise tests.[3] However, the ALJ found that,

---

[3] Young argues that the ALJ's statement that he "has also described feeling pain with range of motion of the left hip, but has been found to have a negative straight leg raise," Tr. 14, is not supported by substantial evidence. In support of the statement, the ALJ cites to five treatment notes in the administrative record. As Young points out, only two of the cited records refer to straight-leg raise tests. Further, those two records document a "normal" test (Exhibit B2F, p. 25-28) and an "equivocal" test (Exhibit B2F, p. 250-253). However, there were other, negative, straight leg-raise tests that the ALJ could have cited, but did not. See, e.g., Tr. 816, 941.

in addition to negative straight leg raise tests, there was a lack of support in the medical evidence based on reports of Young's normal gait, x-rays showing mild degenerative changes, and an MRI that showed minimal abnormalities.  Thus, even if the ALJ erroneously referred to negative straight leg raise tests, his decision is still supported by substantial evidence.

Second, Young takes issue with the ALJ's citation to negative straight-leg raise tests when there are other positive straight-leg raise tests in the record.  Where, as here, there are conflicts in the objective medical evidence, some of which support Young's statements, and others of which do not, "the resolution of [those conflicts] is for the [Acting Commissioner], not the courts."  Irlanda Ortiz, 955 F.2d at 769.  The court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  See Tsarelka, 842 F.2d at 535.  As things stand, there is substantial evidence to support the ALJ's determination that Young's allegations of pain were not substantiated by objective medical evidence, and that is dispositive.

Having determined Young's symptoms were not substantiated by objective medical evidence, the ALJ moved on to the third step in the staged inquiry and discussed the Avery factors.

15

While the ALJ's written decision is sparse on detail concerning his assessment of the Avery factors, the record is clear that the ALJ explored the Avery factors at the administrative hearing. Although consideration of the Avery factors in the ALJ's written decision is preferable, the court looks to the entire record to determine whether the ALJ's credibility finding is supported by substantial evidence. Frustaglia, 829 F.2d at 195. The factors the ALJ explored in the hearing coupled with those that he cited in his written decision constitute substantial evidence to support his credibility finding.[4]

Next, Young argues that despite the ALJ's analysis of the Avery factors, the ALJ's credibility assessment is flawed because the ALJ mischaracterized certain statements Young made at the hearing concerning his activities of daily living. Although the statements are, by themselves difficult to assess from the transcript alone, the court will defer to the ALJ's interpretation of those statements, as he had the benefit of observing and interacting with the claimant at the hearing.

---

[4] At the administrative hearing, the ALJ explored all seven Avery factors. See Tr. 47-48, 51-54, 56. In his written decision, the ALJ discussed four of the seven Avery factors: (1) activities of daily living (factor one); (2) the pain medications Young has taken (factor five); (3) the treatment Young has received for his pain (factor six); and (4) physical therapy notes (factor seven). See Tr. 14.

Additionally, the statements at issue refer to only one of the seven Avery factors. "As a matter of law, the ALJ is not required to address all of the Avery factors in his decision." Matos, 795 F. Supp. 2d at 164-65. Thus, even assuming arguendo, that the ALJ unreasonably interpreted Young's statements, the ALJ's credibility determination still rests on his assessment of six out of the seven Avery factors. That assessment is sufficient.

## Conclusion

Because the ALJ has committed neither a legal nor factual error in evaluating Young's claim, see Manso-Pizarro, 76 F.3d at 16, Young's motion for an order reversing the Acting Commissioner's decision, document no. 8, is denied, and the Acting Commissioner's motion for an order affirming her decision, document no. 10, is granted. The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 4, 2014
cc: D. Lance Tillinghast, Esq.
    Robert J. Rabuck, Esq.